SO ORDERED.

SIGNED April 23, 2013.



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:
GULF FLEET HOLDINGS, INC., et al    CASE NO. 10-50713

    Debtor                          Chapter 11

----------------------------------------------------------------
ALAN GOODMAN, TRUSTEE OF THE
GULF FLEET LIQUIDATING TRUST,

    Plaintiff                           ADV. CASE NO. 12-05048

VERSUS

SOUTHERN CRANE & HYDRAULICS, LLC,

    Defendant
----------------------------------------------------------------
REASONS FOR DECISION
----------------------------------------------------------------

    This adversary proceeding involves preference claims by Alan
Goodman, the trustee of the Gulf Fleet Liquidating Trust (the
"Trustee") against Southern Crane & Hydraulics, LLC ("Southern
Crane"). The court previously entered a consent order on the

Trustee's motion for partial summary judgment granting the motion as to the Trustee's *prima facie* case under section 547 and any defenses except for the  ordinary course defense.  At the trial of this matter, the court granted Southern Crane's request to set aside that part of the consent order that pertained to a payment that was made outside the  90-day reach-back period of section 547(b)(4)(A).  The court took the case under advisement following a March 25, 2013 trial on the remaining issues in the case.  After reviewing the trial record and considering the relevant authorities, the court rules as follows.

## JURISDICTION

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana.  No party in interest has requested a withdrawal of the reference.  The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, the court may enter final orders on the claims and defenses asserted in this case under <u>Stern v. Marshall</u>, ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). <u>See</u> <u>First Choice Drywall, Inc.</u> <u>v. Presbitero (In re First Choice Drywall, Inc.)</u>, 2012 WL 4471570 (Bankr. N.D. Ill. Sept. 25, 2012)(bankruptcy court has the power to determine preference actions after <u>Stern</u> ); <u>Olsen v. PG</u>

-2-

Design/Build, Inc. (In re Smeltzer Plumbing Sys., Inc.), 2011 WL 6176213 (Bankr. N.D. Ill. Dec. 12, 2011)(same); Nanodynamics, Inc. v. Rothstein (In re Nanodynamics, Inc.), 474 B.R. 422, 429 (Bankr. W.D.N.Y. 2012) (same); Appalachian Fuels, LLC v. Energy Coal Resources, Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 744 (E.D. Ky. 2012) (same); In re Am. Hous. Found., 469 B.R. 257, 265 (Bankr. N.D. Tex. 2012) (same); In re DBSI, Inc., 467 B.R. 767, 773 (Bankr. D. Del. 2012) (same); West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care-Katy, LP.), 465 B.R. 452, 463 (Bankr. S.D. Tex. 2011) (same); Burtch v. Huston (In re USDigital, Inc.), 461 B.R. 276, 285 (Bankr. D. Del. 2011) (same).

## BACKGROUND

Gulf Fleet owned and operated a fleet of offshore and fast supply vessels that supported oil and gas exploration and production companies and other oilfield service companies. Gulf Fleet also operated an independent vessel brokerage business. Gulf Fleet purchased equipment and labor services from Southern Crane from 2006 to 2010. The first invoice in the record is dated May 8, 2006, while the last invoice is dated January 13, 2010. From May 2006 through January 2010, Southern Crane issued 33 invoices to Gulf Fleet. With the exception of the May 2006 invoice, the record reflects that Gulf Fleet paid all of the invoices.

-3-

The Trustee challenges four payments made by Gulf Fleet to Southern Crane totaling $99,839.15:

(1)  a $75,109.44 payment made with a check dated February 9, 2010, that cleared on February 12, 2010;

(2)  a $1,498.80 payment made with a check dated March 10, 2010, that cleared on March 12, 2010;

(3)  a $14,125.88 payment made with a check dated March 25, 2010, that cleared on March 29, 2010; and

(4)  a $9,105.03 payment made with a check dated April 9, 2010, that cleared on April 19, 2010.

These four payments covered seven invoices dated between November 25, 2009, and January 13, 2010.

After the Trust was created and the Trustee appointed, the Trustee commenced the present action seeking to avoid these four transfers under 11 U.S.C. §§ 547, 548 and 550. The Trustee subsequently filed a motion for partial summary judgment. In response to the motion, the Trustee and Southern Crane agreed to a consent order providing that the Trustee had established the elements of his section 547 preference claim as a matter of law and that the only issue in dispute was Southern Crane's section 547(c)(2) ordinary course defense. Southern Crane subsequently moved to modify the consent order on the grounds that the parties had miscalculated the 90-day preference period and that the

-4-

$75,109.44 transfer on February 12, 2010, fell outside the preference period. The court granted Southern Crane's motion and ruled that the Trustee had not established the elements of a section 547 claim as a matter of law with respect to this transfer.

**DISCUSSION**

**A.   The February 12, 2010 Transfer.**

The court will first address the $75,109.44 payment that cleared on February 12, 2010. At trial, the court granted Southern Crane's request to vacate the portion of the consent order on the Trustee's motion for partial summary judgment pertaining to this transfer. Accordingly, the Trustee must establish the elements of his claim by a preponderance of the evidence with respect to this transfer. This transfer occurred 91 days prior to the filing of Gulf Fleet's bankruptcy case and, therefore, is not avoidable under section 547(b). 11 U.S.C. § 547(b)(4)(A). The Trustee alternatively asserts that this payment was a fraudulent transfer avoidable under 11 U.S.C. § 548. Section 548(a)(1) allows a trustee to avoid any transfer of the debtor's interest in property if the transfer was the result of actual or constructive fraud. Section 548(a)(1)(A) governs "actual" fraud and allows a trustee to avoid a transfer made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became...indebted." Section 548(a)(1)(B) in turn, governs "constructive" fraud and requires

-5-

proof that (1) the debtor had an interest in property; (2) a transfer of that interest occurred within two years of the bankruptcy filing; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the transfer resulted in no value for the debtor or the value received was not "reasonably equivalent" to the value of the transferred property interest. 11 U.S.C. § 548(a)(1)(B); BFT v. Resolution Trust Corp., 511 U.S. 531, 535 (1994). Here, the Trustee's section 548 claim fails to the extent that it is based on constructive fraud because the February 12th transfer satisfied an antecedent debt. By definition, the satisfaction of an antecedent debt constitutes "reasonably equivalent value" and thus negates an essential element of  from the satisfaction of its contractual obligations under these agreements. 11 U.S.C. § 548(d)(2)(A) (defining "value" to include the "satisfaction or securing of a present or antecedent debt of the debtor.") Given the definition of value in section 548, courts have uniformly held that such payments are not avoidable as constructively fraudulent transfers. See, e.g., In re Southeast Waffles, LLC, 702 F.3d 850 (6th Cir. 2012) ("A dollar-for-dollar reduction in debt constitutes - as a matter of law - reasonably equivalent value...."); In re Sharp Intern. Corp.,403 F.3d 43 (2d Cir. 2005) (conveyance that satisfies an antecedent debt is not a fraudulent conveyance); In re Elrod

Holdings Corp., 421 B.R. 700 (Bankr. D. Del. 2010); In re IFS Financial Corp., 417 B.R. 419, 441-42 (Bankr. S.D. Tex. 2009) (under relevant fraudulent conveyance law, "value" includes satisfaction of an antecedent debt); In re Central Ill. Energy Co-op v. Camile's of Canton, Inc., 2011 WL 3666611 at * 4 (Bank. C.D. Ill. Aug. 22, 2011) (debtor's payment toward contractual obligations "discharged that liability and could not have been fraudulent....").

Moreover, the trial record does not support avoidance of the February 12th transfer based on actual fraud. A plaintiff may establish the fraudulent intent required under section 548(a)(1)(A) by pleading so-called "badges of fraud" as circumstantial evidence of fraudulent intent. These badges of fraud include:

(1) the lack or inadequacy of consideration;

(2) the family, friendship or close associate relationship between the parties;

(3) the retention of possession, benefit or use of the property in question;

(4) the financial condition of the party sought to be charged both before and after the transaction in question;

(5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6) the general chronology of the events and transactions under inquiry.

-7-

See <u>In re Soza</u>, 542 F.3d 1060, 1067 (5th Cir. 2008). No particular "badge" is dispositive, and courts typically require the confluence of multiple badges to establish fraudulent intent. <u>In re Equipment Acq. Resources, Inc.</u>., 481 B.R. 422, 431 (Bankr. N.D. Ill. 2012) ("A single badge of fraud is insufficient to establish intent, but the presence of several may create a presumption that the debts acted with the requisite intent to defraud."). The court concludes that the trial record does not include evidence establishing the confluence of multiple badges of fraud such that would support a finding of fraudulent intent. Accordingly, the court finds against the Trustee on his section 547 and 548 claims with respect to the $75,109.44 transfer on February 12, 2010.

**B.  The Remaining Transfers and the Ordinary Course Defense.**

With respect to the transfers on March 12 and 29, 2010 and April 19, 2010, Southern Crane argues that these payments fall within the "ordinary course" exception of 11 U.S.C. § 547(c)(2). Section 547(c)(2) provides that an otherwise avoidable transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

-8-

> (B) made according to ordinary business
> terms....

11 U.S.C. § 547(c)(2). The ordinary course exception is an affirmative defense, so Southern Crane has the burden of persuasion as to each element of the defense. In re Gulf City Seafoods, 296 F.3d 363, 368 n.5 (5th Cir. 2002). Based on the trial record, there is no genuine dispute that the debts reflected by the challenged invoices were *incurred* in the ordinary course. Rather, the dispute centers on whether the transfers were made in the ordinary course of both parties (which is a subjective inquiry) or whether the transfers were made according to ordinary business terms as reflected in the relevant industry (which is an objective inquiry). In re SGM Acquisition Co. LLC, 439 F3d 233, 239 (5th Cir. 2006).

The subjective prong of the ordinary course defense requires a fact-specific examination of the parties' conduct to determine "whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent." Lightfoot v. Amelia Maritime Services, Inc., (In re Seabridge Marine, Inc.), 412 B.R. 868, 872 (Bankr. E.D. La. 2008). The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took actions that

-9-

gained it an advantage over other creditors in light of the debtor's deteriorating financial condition. See <u>Kleven v. Household Bank F.S.B</u>., 334 F. 3d 638, 642 (7th Cir. 2003); <u>In re Quad Systems Corp</u>., 2003 WL 25947345 at *5 (Bankr. E.D. Pa. 2003). A creditor typically addresses these factors by establishing a "baseline of dealing" as far as the parties' past billing, payment, and collection practices. <u>In re Accessair, Inc</u>., 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). A creditor must establish that the challenged transfer occurring during the preference period falls within the normal pattern of payment practices between the parties during the pre-preference period. <u>Id.</u> The fact that alleged preferential transfers represent the only transactions between the parties does not bar the ordinary course defense as a matter of law. <u>See Kleven</u>, 334 F. 3d at 642 (most courts "view that a first-time transaction is not per se ineligible for protection from avoidance under § 547(c)(2)"); <u>see also In re Finn</u>, 909 F. 2d 903 (6th Cir. 1990); <u>In re Russell Cave Co</u>., 259 B.R. 879 (Bankr. E.D. Ky. 2001). In cases involving one-time transactions, courts look to the terms of the parties' agreement as reflected in invoices or other documents. <u>See Kleven</u>, 334 F. 3d at 642-43. Where the payment varies from the terms of an invoice, courts may look to other

-10-

evidence that the payment was consistent with the parties'
agreement. See <u>In re Quad Systems Corp</u>., 2003 WL 25947345 at *7
("Despite the fact that courts generally take into account the
payment terms of the underlying agreement between the parties,
there is no inflexible rule that late payments cannot be
ordinary").

The objective prong of section 547(c)(2) requires the creditor
to show that the challenged transfers were consistent with the
relevant industry standard. In order to satisfy this burden,
courts require creditors to offer evidence of payment practices
between other creditors and debtors in the relevant industry. <u>In
re Gulf City Seafoods, Inc</u>., 296 F. 3d at 369 ("In our view, for an
industry standard to be useful as a rough benchmark, the creditor
should provide evidence of credit arrangements of other debtors and
creditors in a similar market, preferably both geographic and
product."). This standard cannot be satisfied by proof of the
creditor's own dealings with the debtor or other parties, but
"requires reference to some external data" involving other
creditors and debtors in the relevant industry. <u>In re Merry-go-
round Enterprises, Inc</u>., 272 B.R. 140, 147 (Bankr. D. Md. 2000); <u>In
re Roblin Industries, Inc</u>., 78 F. 3d 30, 43 (2d Cir. 1996)
(creditor did not sustain its burden of proof at trial because it
did not produce evidence of industry practice or custom apart from
the creditor's own experience).

-11-

Turning to the present case, the record reveals transactions dating back to May 2006. The trustee first challenges two transfers made on March 12, 2010 and March 29, 2010. The March 12th transfer covered an invoice dated December 30, 2009, while the March 29th transfer covered two invoices dated January 13, 2010. The time that elapsed between the invoices and the March 12th and March 29th transfers was 72 and 75 days, respectively. With respect to the parties' transactions from September 2006 through April 2009, Gulf Fleet made payments between 56 and 77 days after the date on the invoice.[1] While the payment periods for the March 2010 transfers may be at the high end of the range, they still fall within this range. Moreover, out of the 22 invoices sent to Gulf Fleet from September 2006 to April 2009, 12 invoices (over 50%) were paid between 70 and 77 days after the invoice date. Accordingly, the March 2010 transfers appear consistent with the parties' dealings from September 2006 through April 2009. The record also does not reflect evidence of unusual collection activity with respect to the March 12th and March 29th transfers.

The record reflects two additional transfers totaling $15,635.49 and $ 7,140.56 on January 19, 2010. These transfers

---

[1]A $548.40 invoice was issued on May 8, 2006, but the record does not reflect that this invoice was ever paid. The next invoice after this invoice is dated September 11, 2006.

-12-

occurred between 89 and 112 days after the relevant invoice dates and prior to the 90-day avoidance period. The court excluded these two transfers from its determination of a proper baseline for the parties' course of dealing because these transfers are not consistent with the payment history occurring over the prior three years of the parties' dealings, and because of the proximity between these two transfers and the bankruptcy filing (approximately 4 months). The court also excluded two additional transfers made on January 13, 2010 and January 19, 2010 that totaled $41,000. The January 13th transfer occurred on the same date as the invoice, while the January 19th transfer occurred 2 days after the invoice date. These transfers reflected the purchase of a crane, which appears to be a unique transaction. In contrast, the other invoices dated prior to the preference period only describe, in general terms, labor, mileage and equipment. In sum, the court concludes that the March 2010 transfers are consistent with the pattern of payments made by Gulf Fleet over the course of the parties' pre-preference period dealings. Southern Crane has, therefore, established its ordinary course defense under 11 U.S.C. § 547(c)(2) with respect to these transfers.

The Trustee next challenges a $9,105.03 transfer made on April 19, 2010, that corresponds to an invoice dated January 13, 2010. This transfer occurred 96 days after the invoice date, which

-13-

is almost 20 days over the payment range for invoices from September 2006 through April 2009. While this payment time is consistent with the payment times for the two January 19, 2010 transfers discussed above, these two January 2010 transfers do not provide an appropriate baseline for the parties' pre-preference period dealings. Accordingly, Southern Crane has not met its burden under the subjective prong of section 547(c)(2). The record also does not support Southern Crane's contention that the April 2010 payment is consistent with industry standards for purposes of the objective prong of section 547(c)(2). Accordingly, the court finds in favor of the Trustee on his section 547 claim with respect to the April 19, 2010 transfer totaling $9,105.03.

## CONCLUSION

As set forth herein, the court finds for the Trustee on his section 547 claims with respect to the April 19, 2010 transfer totaling $9,105.03. With respect to the other transfers challenged by the Trustee, the Court rules that the Trustee take nothing on his claims. The Trustee shall submit a proposed judgment that reflects the court's rulings herein within 20 days of this memorandum ruling.

###

-14-